UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

JOSE ORTEGA GUTIERREZ                    CASE No:  1:24cv24915

        Plaintiff,

v.

GEORGE FUENTE, in his official capacity as
Chief of Police of Hialeah Police Department,
HIALEAH POLICE DEPARTMENT,
CITY OF HIALEAH,
FORMER HIALEAH POLICE OFFICERS
RAFAEL QUINONES OTANO AND
LORENZO RAFAEL ORFILA,

        Defendants,

_____/

## COMPLAINT

COMES NOW, the Plaintiff, JOSE ORTEGA GUTIERREZ (hereinafter the "Plaintiff") by and through the undersigned attorneys, and hereby files this Complaint against the Defendants Former Hialeah Police Officers RAFAEL QUINONES OTANO ("OTANO") and LORENZO ORFILA ("ORFILA"), in their individual capacities and for acts that occurred during the course and scope of their employment with HIALEAH POLICE DEPARTMENT ("HPD"). GEORGE FUENTE is sued in his official capacity as Chief of Police of the HIALEAH POLICE DEPARTMENT ("POLICE CHEIF FUENTE"). In support, Plaintiff states as follows:

## INTRODUCTION

This civil action arises from an incident which occurred on December 17, 2022, at approximately 1912 W. 60th Street, Hialeah, Florida 33012, and transcribed over into 97th Avenue and NW 174th Street, Hialeah, Florida. On the aforementioned date, Plaintiff was unlawfully

detained, subjected to excessive and unreasonable force, kidnapped, battered, and otherwise mistreated by officers of the HIALEAH POLICE DEPARTMENT. Specifically, then officers, now former officers, officer OTANO, and Officer ORFILA responded to a call outside of their designated patrol area (area six (6)). Upon arrival, OTANO and ORFILA, under color of law and with no probable cause that Plaintiff had violated any Florida State Statute or Miami-Dade County Ordinance, unlawfully detained, handcuffed, and placed Plaintiff in the back of their patrol unit.

After the Plaintiff was secured inside OTANO's and ORFILA's patrol, the plaintiff demanded to find out why he was being arrested and where the officers were taking him. OTANO and ORFILA simply responded to Plaintiff that he was going for a ride. After a short time thereafter, Plaintiff was taken to a remote location, at the corner of 97th Avenue and 174th Street, where the officers forcibly and while still handcuffed, removed Plaintiff from their patrol unit and threw him headfirst into the ground. Simultaneously, officer Otano and officer Orfila began to physically injure Plaintiff, beating him mercilessly all over his body to the point that Plaintiff lost consciousness.

The Plaintiff was then left uncuffed and unconscious lying on the ground bleeding from the injuries sustained in the attack. OTANO and ORFILA left the Plaintiff without any regard for his safety and for his life. After several minutes, Plaintiff regained consciousness, unhandcuffed and alone, and headed back to the street where a Good Samaritan, an off-duty police officer, rendered Plaintiff with aid and called 911.

Subsequently, a responding officer took a statement from the Plaintiff describing what had been transcribed and who the perpetrators were. Before the onsite investigation concluded, the responding officer received a phone call from OTANO, who after admitting that they had just roughed Plaintiff up to teach him a lesson, and left him there, asked the responding officer to not

file a report.

As a result of the actions of the former officers OTANO and ORFILA, Plaintiff sustained several lacerations to his head, face, and lips, bruises to his body including chest and back, and extremities, bruises and cuts to his cheeks and eyes, loss of consciousness, a concussion, several hematomas all over his head, face and body, severe emotional distress, this list of injuries is a non-exclusive list. Plaintiff was subjected to unwarranted and illegal conduct that violated Plaintiff's constitutional rights.

A Notice of Claim Letter was sent to the City of Hialeah, the Hialeah Police Department, and the Department of Financial Services on May 27, 2023. *See* Letter attached hereto as ***Exhibit "A."***

**JURISDICTION, PARTIES, AND VENUE**

1. This is an action for damages for a deprivation of civil rights guaranteed by the United States Constitution via 42 U.S.C. Sections 1983 and 1988, 4th and 14th Amendments of the U.S. Constitution.

2. The Court has federal questions jurisdiction over the Plaintiff 's federal law claim, pursuant to 28 U.S.C. §§ 1331, 1342(a)(3).

3. Venue is proper in the Southern District Court of Florida, pursuant to 28 U.S.C. § 1391(b), as all Defendant's work and/or reside in this District, and all the acts and omissions giving rise to this action occurred in Miami-Dade County.

4. All conditions precedent to the maintenance of this action have been performed, have occurred prior to its institution, or have been waived.

5. Venue is proper in the Southern District Court of Florida, pursuant to 28 U.S.C. § 1391(b), as all Defendants work and/or reside in this District, and all of the acts and omissions giving

rise to this action occurred in Miami-Dade County.

6.   All conditions precedent to the maintenance of this action, including those set forth in Florida Statute §768.28, have been performed, have occurred prior to its institution, or have been waived.

7.   Defendant, CHIEF OF POLICEFUENTE, was at all times relevant, the elected Chief of Police of the Hialeah Police Department ("HPD") and was responsible for overseeing the HPD, the governmental entity responsible for providing law enforcement services in and around Miami-Dade County, within the City of Hialeah, Florida specifically. CHIEF OF POLICE FUENTE is sued herein in his official capacity as Chief of Police of HPD.

8.   CHIEF OF POLICE FUENTE, in his official capacity as Chief of Police of Hialeah Police Department, is liable for any injury or death suffered as a result of any act, event, or omission of an action occurring within the scope of employment of any officer, employee, or agent of HPD, unless such officer, employee, or agent acted in bad faith or with malicious purpose exhibiting wanton and willful disregard for human rights or safety.

9.   At all times material hereto, Defendant OTANO was a resident of Miami-Dade County and Hialeah, Florida, and committed the acts and omissions contained herein in Miami-Dade County, Florida, and within Hialeah, Florida specifically. At all times material, Defendant OTANO was employed by HPD as a law enforcement officer and was acting in conformance with HPD's policies and procedures and under the color of state law.

10. At all times material hereto, Defendant ORFILA was a resident of Miami-Dade County and Hialeah, Florida, and committed the acts and omissions contained herein in Miami-Dade County, Florida, and within Hialeah, Florida specifically. At all times material, Defendant OTANO was employed by HPD as a law enforcement officer and was acting in conformance

with HPD's policies and procedures and under the color of state law.

**FACTUAL ALLEGATIONS**

11. At 5:13 PM Saturday, December 17, 2022, officers ORFILA and OTANO were dispatched to a call for service in reference to a disturbance that occurred at Los Tres Conejitos Bakery.

12. Located in a shopping center at 1912 West 60th Street, Hialeah, Florida.

13. Both officers responded and made contact with the 50-year-old Plaintiff. The Plaintiff was well known to the officers who patrol this part of Hialeah as a homeless individual who consistently roams the shopping center area.

14. The Plaintiff was detained and placed in handcuffs by officer ORFILA and then placed into the rear of his Hialeah police car.

15. Based on a review of surveillance videos from numerous locations in the area of the bakery, Hialeah police detectives were unable to identify any violation of Florida State Statutes or Miami-Dade County ordinances that would have prompted or justified taking Plaintiff into custody.

16. After being placed in the rear of the police car of the former officer, the Plaintiff was not transported to the local corrections facility which is the jail. As would be the normal process for an arrest in Hialeah or for any arrest anywhere in Miami-Dade County. Instead, he was taken to an isolated and dark location against his will. It is located at 697th Avenue. Later it was determined to be the address known as 97th Ave and Northwest 174th Street.

17. There, the Plaintiff was taken out of the Hialeah police car and while handcuffed, he was beaten and thrown to the ground by officers OTANO and ORFILA.

18. The plaintiff lost consciousness during the incident and ultimately woke up alone, unhandcuffed, and bleeding from the head. He was in the same isolated area.

19. Plaintiff then walked south on Southwest 97th Ave. As he was walking back after being beaten and abandoned, he was spotted by an off-duty Hialeah police officer who happened to be walking his dog who then, was the one who called 911.

20. Subsequently, the Plaintiff provided the Hialeah Police Department with a sworn video-recorded statement attesting to these facts.

21. After providing his sworn video-recorded statement, the Plaintiff was taken for medical treatment to deal with his injuries.

22. The Hialeah Police's investigation immediately discovered some highly unusual circumstances regarding the actions of these two officers and it verified the Plaintiff's statement.

23. Both former officers OTANO and ORFILA's vehicles are equipped with global positioning systems that are known as GPS, which tracks and records all the vehicle's locations throughout the day.

24. The GPS patrol car recordings for Saturday, December 17, 2022, indicated that both officers were outside of their assigned sectors. In this case, it was sector 4 of Hialeah.

25. For a period of time, with no reason ever, reported or logged, the GPS Data from Officer OTANO and ORFILA's police vehicles. It also provided an exact turn-by-turn, block-by-block path taken to arrive at the area of NW 67th Ave and 107th St.

26. The GPS data also showed that the 6.6-mile distance from the bakery to NW 97 Ave and 174th St where the victim was beaten and abandoned, was traversed in 11 minutes.

27. The patrol cars made that trip with their emergency lights flashing alerting Hialeah Road users that the police vehicles were approaching at a high rate of speed.

28. Responding to the off-duty police officer's call, the Hialeah Police radio communication

advised that there was a victim who was beaten up at an unknown location in sector 6.

29. Hialeah Police officer Johny Ferrer responded and arrived on the scene. He then received a phone call from Officer ORFILA inquiring about the Plaintiff's condition.

30. Then, officer ORFILA requested that Officer Ferrer classify the 911 call as a no report, or to report that officer Ferrer was on the scene just assisting the fire rescue.

31. Officer ORFILA further indicated to officer Ferrer that they had dropped off the Plaintiff in sector 6 (which is outside of their assigned sector 4) and that they had roughed the Plaintiff up to give the Plaintiff a lesson.

32. Once officer Ferrer made contact with the Plaintiff on the scene, Plaintiff informed Ferrer that he was beaten up by Hialeah police officers at an unknown location.

33. The Hialeah Police Department of Professional Compliance Bureau ("PCB") began an investigation into this incident.

34. At that point, the investigation revealed additional irregularities such as the failure of officers OTANO and ORFILA individual daily activity reports to document the transport of Plaintiff to the area on 97th Ave.

35. The failure of the officers OTANO and ORFILA to notify police dispatch that they were transporting an individual in a city of Hialeah police vehicle prior to that transport; which is required by Hialeah Police Procedures.

36. Not only did no such notification occur, but they each cleared their involvement at the bakery as a no report.

37. Despite departmental orders Officer OTANO and ORFILA both failed to turn on their body-worn cameras during their entire encounter with Plaintiff.

38. Due to the evidence and information gathered by the PCB investigation the actions

undertaken by officers OTANO and ORFILA are serious criminal acts, and they were charged with Armed Kidnapping and Assault and Battery.

39. At the end of the investigation officers OTANO and ORFILA were removed and reassigned and were then relieved from their duty.

40. For his actions, against the Plaintiff, former officer RAFAEL QUINONES OTANO was arrested and charged with violation of Fla. Sta. § 787.01(1), for Kidnapping the Plaintiff and Battery Case No F23001678B. OTANO was convicted of Kidnapping and sentenced to 66 months in prison followed by five years of probation under the supervision of the Department of Corrections. See Judgment and Sentence attached as *Exhibit "B."*

41. In addition, officer LORENZO RAFAEL ORFILA was arrested and charged with Kidnapping in violation of Fla. Sta. § 787.01 with a Weapon, Firearm Aggravated, and Aggravated Battery, in violation of Fla. Sta. § 784.045, Official Misconduct in violation of Fla. Sta. § 838.022 and Attempt, Battery, and Official Misconduct, Cases Nos F23001678C and F23001747. Trial is pending.

42. A third individual, ALI AMIN SALEH ("SALEH") was a private investigator who was charged with witness tampering an individual who added an additional layer to OTANO and ORFILAS' criminal conduct.

43. SALEH showed up in a white pickup truck and offered Plaintiff with $1,200 in US Currency to sign an affidavit regarding the Plaintiff's case involving OTANO and ORFILA.

44. SALEH advised Plaintiff that based on the previous encounter with officers OTANO and ORFILA, the Plaintiff would be able to make easy money.

45. SALEH provided Plaintiff with the $1,200 in U.S. currency.

1. SALEH coaxed Plaintiff to sign an affidavit form in English and in Spanish, which had

been pre-notarized by the Florida Public Notary, JUAN ANTONIO PRIETOCOFINO ("PRIETOCOFINO").

46. PRIETOCOFINO indicated that he did a favor for SALEH whose business was near to his own.

47. PRIETOCOFINO notarized the English and Spanish statements which were provided by SALEH without Plaintiff being present.

48. The statements procured by SALEH stated when the Plaintiff was born, and the facts occurred on the incident from December 17, 2022.

49. The notarized affidavits stated that the Plaintiff was arrested for drinking in public and handcuffed and transported to TGK, which is the jail. Further, the statements stated that the Plaintiff asked OTANO and ORFILA not to take him to jail.

50. The notarized affidavits also stated that when Plaintiff was dropped off, Plaintiff was not hit, stricken, or beaten.

51. This was all supposed to be covered in this affidavit in order to exonerate and negate what had happened to Plaintiff on December 17th, 2022.

52. SALEH gave the Plaintiff an additional amount of $150. This brings the total amount given to Plaintiff to $1,350.

53. The plaintiff was advised by SALEH that the purpose of the money was to buy his cooperation in exchange for withholding his testimony against Officer OTANO and ORFILA and having the case dismissed.

54. SALEH then orchestrated and directed Plaintiff in a scenario that Plaintiff believed SALEH recorded with his cellular phone, asking to dismiss the case against OTANO and ORFILA.

55. Plaintiff does not know how to read English or Spanish and he had no idea what was written

in those documents.

56. The plaintiff took the money SALEH provided to him because he was homeless and the Plaintiff needed the money since he was unemployed.

57. For this incident, on January 25, 2023, SALEH was arrested and charged with Felony Tampering with Evidence for violation of Fla. Sta. § 918.13, Witness Interference, violation of Fla. Sta. § 914.22 Victim Interference, violation of Fla. Sta. § 914.22, Case No F23001678A. This trial is pending as of the date of this Complaint.

Moreover, on January 25, 2023, PRIETOCOFINO was arrested and charged with Fraud and Notary/False or falsely or fraudulently taking an acknowledgment of an instrument as a notary public or who falsely or fraudulently making a certificate as a notary public or who falsely takes or receives an acknowledgment of the signature on a written instrument in violation of Fla. Sta. § 117.05, Case No F23001678D. On October 3, 2023, PRIETOCOFINO pleaded guilty and was sentenced. See the Finding of Guilt attached hereto as *Exhibit "C."*

## ALLEGATIONS AGAINST CHIEF OF POLICEFUENTE

58. On a daily basis, Hialeah Police Officers come into contact with citizens during their patrolling duties. Despite this daily contact, Defendant CHIEF OF POLICE FUENTE made no effort to adequately train and supervise said deputies. In order to adequately deal with the certainty of police contact with citizens, CHIEF OF POLICE FUENTE is charged with supplying the public with a police force that is adequately trained and equipped to handle calls dealing with those who are non-violently not complying.

59. CHIEF OF POLICE FUENTE was aware that there needed to be effective supervision

and a command structure in place to deal with the problem of responding to incidents with non-threatening eyewitnesses. CHIEF OF POLICE FUENTE failed to provide adequate supervision of its deputies in the field when said deputies encountered those who are non-threatening.

60. At all times material hereto, CHIEF OF POLICE FUENTE was responsible for adopting and implementing the rules and regulations specifically in relation to hiring, screening, training, supervising, controlling, disciplining, and assigning deputies to their respective duties within the Hialeah Police Department.

61. CHIEF OF POLICE FUENTE's deliberate indifference, failure to train, failure to effectively supervise, and its permission (and tolerance of) the patterns and practices

62. enumerated above, were the moving forces causing the serious injuries to Plaintiff and the violation of Plaintiff's Constitutional Rights.

63. The actions of Defendants OTANO, ORFILA in this case, as well as the actions of Defendant CHIEF OF POLICEFUENTE in other similar situations, indicate that the officers who violated Plaintiff's rights acted in accordance with CHIEF OF POLICE FUENTE's policies and reflect policies that were adopted by CHIEF OF POLICE FUENTE and their high-ranking officials.

### COUNT I: 42 U.S.C. § 1983 –EXCESSIVE USE OF FORCE BY OFFICER OTANO

64. Plaintiff hereby realleges and incorporates by reference paragraphs 1- 63 in this complaint as though fully set forth herein.

65. The force used by Defendant OTANO against Plaintiff d u r i n g the course of Plaintiff's armed kidnapping was objectively inhuman and unnecessary and constituted the unreasonable and excessive use of force in violation of Plaintiff's clearly established

constitutional rights under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983.

66. Defendant OTANO used unreasonable and excessive force against Plaintiff when, with a depraved indifference to human life and conscious disregard for the safety of the general public, handcuffed, transported to a deserted location, and threw to the ground the Plaintiff and began beating him.

67. Defendant OTANO committed the acts described hereinabove in a gross disregard of Plaintiff's constitutional rights while acting under color of law, and specifically deprived Plaintiff of his constitutional right to be free from excessive police force under the Fourth Amendment.

68. As a further direct and proximate result of Defendant OTANO's conduct, Plaintiff suffered a deprivation of his liberty and freedom, bodily injury, and resulted in pain and suffering, mental anguish, and voluminous medical expenses for medical treatment and care. These losses are either permanent and/or continuing, and Plaintiff will continue to suffer these losses in the future, in violation of his civil rights. The plaintiff has also agreed to pay the undersigned a reasonable attorney fee for services provided.

WHEREFORE, Plaintiff prays for the following relief:

a.  Judgment for compensatory damages in excess of $100,000.00;

b.  Judgment for exemplary or punitive damages;

c.  Cost of suit;

d.  Reasonable attorney fees, pursuant to 42 U.S.C. § 1983;

e.  Trial by jury as to all issues so triable; and

f.  Such other relief as this Honorable Court may deem just and appropriate.

## COUNT II: 42 U.S.C. § 1983 – EXCESSIVE USE OF FORCE BY OFFICER ORFILA

69. Plaintiff hereby realleges and incorporates by reference paragraphs 1- 63 in this complaint as though fully set forth herein.

70. Defendant ORFILA used unreasonable and excessive force against Plaintiff when, with a depraved indifference to human life and conscious disregard for the safety of the general public, he assisted OTANO when he handcuffed, transported to a deserted location, and threw to the ground the Plaintiff and began beating him.

71. Defendant ORFILA committed the acts described hereinabove in a gross disregard of Plaintiff's constitutional rights while acting under color of law, and specifically deprived Plaintiff of his constitutional right to be free from excessive police force under the Fourth Amendment.

As a further direct and proximate result of Defendant ORFILA's conduct, Plaintiff suffered a deprivation of his liberty and freedom, bodily injury and resulting pain and suffering, mental anguish, and voluminous medical expenses for medical treatment and care. These losses are either permanent and/or continuing, and Plaintiff will continue to suffer these losses in the future, in violation of his civil rights. The plaintiff has also agreed to pay the undersigned a reasonable attorney fee for services provided.

WHEREFORE, Plaintiff prays for the following relief:

    a. Judgment for compensatory damages in excess of $100,000.00;

    b. Judgment for exemplary or punitive damages;

    c. Cost of suit;

    d. Reasonable attorney fees, pursuant to 42 U.S.C. § 1983;

    e. Trial by jury as to all issues so triable; and

f.   Such other relief as this Honorable Court may deem just and appropriate.

### COUNT III: 42 U.S.C. §1983 – DELIBERATE INDIFFERENCE BY DEFENDANT CHIEF OF POLICE FUENTE

72. Plaintiff hereby realleges and incorporates by reference paragraphs 1- 63 in this complaint as though fully set forth herein.

73. Defendant CHIEF OF POLICEFUENTE violated the Plaintiff's Fourth Amendment rights by failing to train its deputies to reasonably respond to individuals using a reasonable amount of force and by engaging in policies and practices that caused constitutional violations to people by inappropriately responding with excessive force.

74. These constitutional violations were caused by CHIEF OF POLICE FUENTE's lack of training and supervision in regard to deputies having the ability and knowledge to appropriately interact with arrestees without causing serious physical injury.

75. Defendants OTANO AND ORFILA knew or should have known to use force that was objectively reasonable in light of the totality of the circumstances.

76. As a further direct and proximate result of the conduct of Defendant POLICE

77. COMMISSIONER FUENTE, Plaintiff suffered a deprivation of his liberty and freedom, bodily injury and resulting pain and suffering, mental anguish, and voluminous medical expenses for additional treatment and care. These losses are either permanent or continuing, and Plaintiff will continue to suffer these losses in the future, in violation of his civil rights. The plaintiff has also agreed to pay the undersigned a reasonable attorney fee for services provided.

WHEREFORE, Plaintiff prays for the following relief:

a.   Judgment for compensatory damages in excess of $100,000.00;

b.   Judgment for exemplary or punitive damages;

    c.   Cost of suit;

    d.   Reasonable attorney fees, pursuant to 42 U.S.C. § 1983;

    e.   Trial by jury as to all issues so triable; and

    f.   Such other relief as this Honorable Court may deem just and appropriate.

## COUNT IV: 42  U.S.C. § 1983 CLAIM AGAINST CHIEF OF POLICE FUENTE
## (FAILURE TO TRAIN AND SUPERVISE)

78. Plaintiff hereby realleges and incorporates by reference paragraphs 1- 63 in this complaint as though fully set forth herein.

79. CHIEF OF POLICE FUENTE's chief policy maker, POLICE COMMISSIONER FUENTE, is responsible for the implementation and promulgation of official policies for CCSO, including policies for its deputies to follow when making arrests and the use of force when making arrests. Further, CHIEF OF POLICE FUENTE is responsible for the promulgation of policies and the implementation of training to maintain an effective police force that is capable and prepared to deal with all members of the public.

80. CHIEF OF POLICE FUENTE was deliberately indifferent to its responsibility to adequately prepare its deputies/officers for encounters with citizens under investigation and for their interaction with, detention, and arrest of the same.

81. CHIEF OF POLICE FUENTE is charged with properly training officers with the available and necessary non-deadly-force skills that would allow officers to investigate a situation and also maintain their own safety.

82. CHIEF OF POLICE FUENTE was deliberately indifferent to its responsibility to create an effectively trained police force that could adequately respond to the scene of encounters. All of the conduct at the scene to investigate the Plaintiff's situation was contrary to established police methods. Thus, there were no sufficiently trained deputies

available to reasonably and effectively deal with the Plaintiff's situation. All of the acts and omissions of the insufficiently trained officers were inappropriate to the situation and caused the encounter to be escalated.

83. Further, the officers were not provided with sufficiently detailed policies and procedures to use in investigating a situation involving non-threatening eyewitnesses. These officers did not have the adequate direction or assistance with which to respond to the incident that occurred on December 17, 2022.

84. All of the above-referenced failures are the responsibility of CHIEF OF POLICE FUENTE, which was deliberately indifferent to its responsibility to have appropriate policies and procedures in place and to train and supervise officers employed by CHIEF OF POLICE FUENTE to deal with the public.

85. As a further direct and proximate result of the conduct described above, Plaintiff suffered a deprivation of his liberty and freedom, bodily injury and resulting pain and suffering, mental anguish, and voluminous medical expenses for additional treatment and care. These losses are either permanent or continuing, and Plaintiff will continue to suffer these losses in the future, in violation of his civil rights. The plaintiff has also agreed to pay the undersigned a reasonable attorney fee for services provided.

WHEREFORE, Plaintiff prays for the following relief:

a. Judgment for compensatory damages in excess of $100,000.00;

b. Judgment for exemplary or punitive damages;

c. Cost of suit;

d. Reasonable attorney fees, pursuant to 42 U.S.C. § 1983;

e. Trial by jury as to all issues so triable; and

f.   Such other relief as this Honorable Court may deem just and appropriate.

## COUNT V: 42 U.S.C. § 1983 UNLAWFUL DETENTION AGAINST OFFICER OTANO, OFFICER ORFILA, AND CHIEF OF POLICE FUENTE

86. Plaintiff hereby incorporates paragraphs 1-63 in this complaint as though fully set forth herein.

87. Under the Fourth Amendment to the United States Constitution, the Plaintiff has the right to not be arrested without probable cause.

88. Defendants OTANO and ORFILA intentionally committed acts that violated Plaintiff's constitutional right to not be arrested without probable cause.

89. When Defendants OTANO and ORFILA kidnapped Plaintiff they did not know of any facts or circumstances that would cause a reasonable officer to believe that Plaintiff has committed, is committing, or is about to commit, an offense.

90. Defendants OTANO and ORFILA violated Plaintiff's Fourth Amendment right to be free from unlawful seizure when they detained, transported, and beat Plaintiff.

91. Defendant OTANO's conduct caused Plaintiff to suffer multiple injuries including, but not limited to, economic losses, pain and suffering, and humiliation and these damages will continue into the foreseeable future.

92. The plaintiff would not have suffered these injuries if it were not for Officer OTANO's conduct.

93. Officer OTANO acted under the color of law in that each claimed to be performing an official duty, but his acts were outside the limits of lawful authority and were abusive in a manner and acted in a way that misused his power and was able to do so only because he was an official.

94. CHIEF OF POLICE FUENTE is liable for the violations of Plaintiff's constitutional rights because he failed to institute a policy designed to ensure that officers under his supervision and control did not conduct unlawful arrests and/or detention of individuals.

WHEREFORE, Plaintiff prays for the following relief:

a. Judgment for compensatory damages in excess of $100,000.00;

b. Judgment for exemplary or punitive damages;

c. Cost of suit;

d. Reasonable attorney fees, pursuant to 42 U.S.C. § 1983;

e. Trial by jury as to all issues so triable; and

f. Such other relief as this Honorable Court may deem just and appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff individually demands a trial by jury, and judgment against DEFENDANTS HIALEAH POLICE DEPARTMENT, HIALEAH CHIEF OF POLICEGEORGE FUENTE, FORMER HIALEAH POLICE OFFICERS RAFAEL QUINONES OTANO AND LORENZO RAFAEL ORFILA, in their individual and official capacity; (Collectively "DEFENDANTS") for special damages, damages for past, present, and future medical expenses, compensatory damages, exemplary and punitive damages, pain and suffering, and impairment of future earning capacity, together with attorney's fees and court costs and such other relief the as the Court may deem just and proper.

Dated 14th day of December 2024.

## **TRIAL BY JURY**

Plaintiff requests a Jury Trial on all issues so triable.

Respectfully Submitted,


**BORGE LAW FIRM, P.A.**
*Attorneys for the Plaintiff*
13499 Biscayne Blvd., Suite 106
North Miami, Florida 33181
Phone: (305)846-9932
Fax: (305)850-7773
Email: nidiaborge@borgelawfirmpa.com


By:     /S/ *Nidia Borge*

Nidia Borge, Esq.
Florida Bar No.: 1010348


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I filed copy of the foregoing via Federal E-filing  system and

served copy of the same to all parties listed on the date of service indicated in the list.


By:     /S/ *Nidia Borge*

Nidia Borge, Esq.
Florida Bar No.: 1010348